IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TODD JAMES RAINES, #A0174414, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| HAWAII DEP'T OF PUBLIC SAFETY, SCOTT JINBO, JEANETTE BALTERO, DOES 1-10, | ) ) ) ) ) |
| Defendants. | ) ) |
| _____ | ) |

CIV. NO. 16-00197 DKW/RLP

ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A(b)

**ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A(b)**

Before the court is pro se Plaintiff Todd James Raines' prisoner civil rights complaint. Raines is incarcerated at the Saguaro Correctional Center ("SCC") located in Eloy, Arizona. Raines names the Hawaii Department of Public Safety ("DPS") in its official capacity, and DPS Mainland Branch Unit Supervisor Scott Jinbo ("Jinbo"), Contract Monitor Jeanette Baltero ("Baltero"), and Does 1-10 in their official and individual capacities (collectively, "Defendants").

Raines invokes federal jurisdiction under 42 U.S.C. §§ 1983, 1985, and 1988. He claims Defendants violated his rights to due process under the Fourteenth Amendment and Article I, Section Five of the Hawaii Constitution. *See*

Compl., Doc. No. 1. Raines further alleges Defendants violated Haw. Rev. Stat. §§ 92F, and state common law. *Id.*

Raines' Complaint is DISMISSED for failure to state a cognizable claim for relief. *See* 28 U.S.C. §§ 1915(e)(2) & 1915A(b). He is granted leave to amend to correct the Complaint's deficiencies on or before July 8, 2016.

## I.  BACKGROUND[1]

In 2010, Raines sued Corrections Corporation of America ("CCA"), which owns and operates SCC, for religious discrimination. *See Raines v. Corr. Corp. of America*, No. CV-10-01817 (D. Ariz. 2010). On November 16, 2011, the parties signed a stipulated settlement, and Raines dismissed all claims. *Id.*, Doc. No. 100.

On September 24, 2014, Raines attended a Rosh Hashanah service at SCC, where he complained to the SCC Chaplain that it was being held on the wrong day.[2] Raines was issued disciplinary report No. DR #970-14, for violations of SCC/CCC policies "C-9 Failure To Follow/C-12 Hindering." Compl. Doc. No. 1, PageID #8. On September 25, 2014, SCC Assistant Warden Benjamin Griego

---

[1] These facts are taken from the Complaint and publicly available documents that are referred to in the Complaint and are accepted as true for the purposes of this Order, but should not be construed as findings by the court.

[2] In 2014, Rosh Hashanah began on Sept. 24 at sundown and ended Sept. 26, at sundown. *See* https://www.hebcal.com/holidays/rosh-hashana; http://sidroth.org/rosh-hashanah-2014. (last visited May 26, 2016).

ordered Raines moved to segregation. On September 30, 2014, Raines was found guilty of both charges and sentenced to sixty days disciplinary segregation.

On or about October 1, 2014, Raines says Defendants Jinbo and Baltero "arbitrarily, deceitfully, and irrationally converted the [CCA] DR #970-14," C-9 and C-12 violations, into DPS misconduct violations of "Rule 4.3a7(12)" and "Rule 4.3a8(11)," respectively, and entered that information into his DPS institutional file.[3]  *Id.*, PageID #9-10.  Raines alleges Jinbo and Baltero's actions violated his state-created liberty interests without due process of law, increased his sentence, and adversely affected his consideration for parole.[4]  *Id.*

---

[3]DPS misconduct violations can be found in the DPS Policies and Procedures Manual ("PPM"), at: http://dps.hawaii.gov/wp-content/uploads/2014/12/COR.13.03.pdf.

COR.13.03.4.3a.7(12) prohibits:

The use of physical interference or obstacle resulting in the obstruction, hindrance, or impairment of the performance of a correctional function by a public servant, which requires facts related to the conduct and does not require that the conduct was an intentional act.

There is no COR."4.*3a8(11)*." However, COR.13.03.4.*4a.8(11)* prohibits "[f]ailing to perform work as instructed by a staff member," and COR.13.03.4.*3a.7(11)* prohibits "[e]ncouraging or inciting others to refuse to work or to participate in a work stoppage." PPM: http://dps.hawaii.gov/wp-content/uploads/2014/12/COR.13.03.pdf.

[4]Raines is serving a term of life with parole for Murder, and five years for Forgery in the Second Degree.  *See State v. Raines*, 1PC85-0-000146 (Haw. 1st Cir. 1999), Dkt. No. 173, *aff'g judgment and sentence*, at: http://hoohiki1.courts.state.hi.us/jud/Hoohiki/main.htm. (last visited May 26, 2016).

On July 1, 2015, Raines filed a motion to "disaffirm" the settlement agreement in *Raines v. Corr. Corp. of America*, No. CV-10-01817, Doc. No. 102, which the district court denied, Doc. No. 110.

On April 25, 2016, Raines commenced this suit. He alleges three causes of action under the Fourteenth Amendment for violation of due process (pursuant to liberty interests allegedly arising under Haw. Rev. Stat. §§ 92F, 706-669, & 706-670)[5] (Counts I, III, and V). *See id.*, PageID #8-10, 12. Raines also alleges six state law claims, three under Article I, Section 5 of the Hawaii Constitution (Counts II, IV, VI), defamation (Count VII), negligence (Count VIII), and a claim for violation of Haw. Rev. Stat. § 92F, et seq. (Count IX). *See id.*, PageID #11, 13-18. Raines seeks declaratory, compensatory, and punitive relief, and an order expunging his converted SCC/CCA charges from his DPS institutional file.

---

[5]Hawaii's Uniform Information Practices Act, Section 92F, sets forth procedures individuals may take if they believe their personal record with a state agency "contains a factual error, misrepresentation, or misleading entry." Haw. Rev. Stat. § 92F-24(a). Upon a written request to correct the record, the agency must respond within twenty days by either correcting the record or denying the request in writing, detailing the reason for denial and providing instructions on how to appeal. Section 92F-25 governs appeals and requires the agency to inform the appellant how to seek an "appropriate judicial remedy." Haw. Rev. Stat. § 92F-25(b)(2).

Sections 706-669, & 706-670 pertain to the Hawaii Paroling Authority's ("HPA") procedures for setting minimum terms of imprisonment, granting, denying, or revoking parole, or for final release from custody.

## II. **LEGAL STANDARD**

The court must screen all prisoner civil actions seeking redress from a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). Complaints or claims that are frivolous, malicious, fail to state a claim, or seek relief from an immune defendant must be dismissed. 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e(c)(1). During screening, the court sets conclusory factual allegations aside, accepts non-conclusory factual allegations as true, and determines whether these allegations state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-80 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausibility finding does not mean "probability," but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. The court should "draw on its judicial experience and common sense" to determine plausibility. *Id.* at 679.

To state a claim, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that lacks a cognizable legal theory or alleges insufficient facts under a cognizable legal theory fails to state a claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). "Threadbare recitals of the elements of a cause

of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 679; *Twombly*, 550 U.S. at 555.

Leave to amend should be granted if it appears the plaintiff can correct the complaint's defects. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). A court has the discretion to dismiss a complaint without leave to amend, however, when "it is clear that the complaint could not be saved by any amendment." *Sylvia Landfield Trust v. City of L.A.*, 729 F.3d 1189, 1196 (9th Cir. 2013).

### III. DISCUSSION

**A.     Federal Jurisdiction: 42 U.S.C. §§ 1983, 1985, 1988**

Raines invokes jurisdiction under § 1983. "To sustain an action under section 1983, a plaintiff must show '(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right.'" *Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir. 2007) (citation omitted), *vacated and remanded on other grounds*, 556 U.S. 1256 (2009); *see also West v. Atkins*, 487 U.S. 42, 48 (1988); 42 U.S.C. § 1983. Additionally, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant, and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

Raines also invokes jurisdiction under 42 U.S.C. § 1985, alleging Defendants conspired to violate his rights. To state a conspiracy under § 1985(3), a plaintiff must show: (1) a conspiracy; (2) to deprive any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act by one of the conspirators in furtherance of the conspiracy; and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States. *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980).

Because § 1985 derives from the Thirteenth Amendment, a plaintiff must also allege "invidiously discriminatory, racial or class-based animus." *Caldeira v. Cty. of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1989); *Gillespie*, 629 F.2d at 641. If an alleged conspiracy is predicated on the same allegations as the § 1983 claim, the absence of a § 1983 claim precludes a § 1985 conspiracy claim. *Id.* at 1182. A conspiracy claim under § 1985 "must allege facts to support the allegation that the defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988); *see also Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1039 (9th Cir. 1991).

Finally, Raines invokes jurisdiction under 42 U.S.C. § 1988, which authorizes the award of attorney's fees to a prevailing party. Pro se litigants, however, are not entitled to an award of attorneys' fees under § 1988.[6] *See Friedman v. Arizona*, 912 F.2d 328, 333 n.2 (9th Cir. 1990); *Gonzalez v. Kangas*, 814 F.2d 1411, 1412 (9th Cir. 1987); *cf. Kay v. Ehrler*, 499 U.S. 432, 437-38 (1991) (no award to attorneys representing themselves); *Elwood v. Drescher*, 456 F.3d 943, 946-48 (9th Cir. 2006) (discussing pro se attorney-defendant). Nor does § 1988 provide an independent cause of action for civil rights violations. *Moor v. County of Alameda*, 411 U.S. 693, 702 (1973).

**B.    Official Capacity Claims**

Raines names DPS in its official capacity. Absent a waiver by the state or a valid congressional override, state agencies are immune from suit for damages in federal court pursuant to the Eleventh Amendment. *Dittman v. California*, 191 F.3d 1020, 1025-26 (9th Cir. 1999). Hawaii has not waived its Eleventh Amendment immunity for § 1983 claims, and Congress did not intend § 1983 to abrogate a state's Eleventh Amendment immunity. *Id.* (citing *Kentucky v. Graham*, 473 U.S. 159, 169 n.17 (1985)). Moreover, DPS is not a "person" within

---

[6]*Represented* prevailing party prisoners are entitled to attorneys' fees within the limits prescribed by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(d).

the meaning of § 1983. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 53-54 (1996); *see also Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1327 (9th Cir. 1991). Raines' federal claims against DPS are DISMISSED with prejudice.

Raines names Jinbo and Baltero in their official and individual capacities. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Hafer v. Melo*, 502 U.S. 21, 30 (1991) (clarifying that Eleventh Amendment does not bar suits against state officials sued in their individual capacities, or suits for prospective injunctive relief against state officials in their official capacities).

Raines' federal damages claims against Jinbo and Baltero in their official capacities are DISMISSED with prejudice. This does not affect Raines' claims against Jinbo and Baltero in their official capacities for prospective injunctive relief.

C. **Doe Defendants**

The Federal Rules of Civil Procedure do not authorize or prohibit the use of fictitious parties, although Rule 10 requires a plaintiff to include the names of all

parties in his complaint. Fed. R. Civ. P. 10(a). Doe defendants are generally disfavored, however, because it is normally impossible for the United States Marshal to serve an anonymous defendant.

A plaintiff may refer to unknown defendants as Defendant John Doe 1, John Doe 2, John Doe 3, and so on, but he must allege specific facts showing how each individual doe defendant violated his rights. A plaintiff may then use the discovery process to obtain the names of doe defendants and seek leave to amend to name those defendants, unless it is clear that discovery will not uncover their identities, or that the complaint will be dismissed on other grounds. *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)).

Raines names Does 1-10, but makes no specific allegations against them individually or collectively, nor does he provide any identifying facts concerning them. This is insufficient to state a claim against Does 1-10, and they are DISMISSED. If Raines amends his Complaint and includes Does 1-10, he must provide specific facts showing how each Doe individually participated in his claims. If the Complaint is not otherwise subject to dismissal, Raines may then be allowed to conduct discovery to identify Does 1-10, and thereafter amend his pleading to name them pursuant to Fed. R. Civ. P. 15.

**D.     Federal Due Process Claims: Counts I, III, V**

Raines claims Jinbo and Baltero violated his right to due process under the Fourteenth Amendment when they converted his SCC/CCA disciplinary charges to allegedly incompatible DPS charges and amended his DPS institutional file to include the converted charges.  He vaguely and conclusorily alleges this diminishes his chances of being granted parole.

To state a due process violation, a plaintiff must first establish the liberty interest for which protection is sought.  Liberty interests may arise from the Due Process Clause itself or from state law.  *Hewitt v. Helms*, 459 U.S. 460, 466-68 (1983), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472, 481-84 (1995); *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *Chappell v. Mandeville*, 706 F.3d 1052, 1062 (9th Cir. 2013).  If no protected liberty interest is at stake, no process is required.  *See, e.g.*, *Wilkinson*, 545 U.S. at 221; *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 459-60 (1989); *Meachum v. Fano*, 427 U.S. 215, 223-24 (1976); *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002).  A prisoner has no liberty interest directly under the Fourteenth Amendment if the challenged prison practice or sanction is "within the normal limits or range of custody which the conviction has authorized the State to impose." *Meachum v. Fano*, 427 U.S. 215, 225 (1976); *see also Hewitt*, 459 U.S. at 466-70.

A state-created liberty interest may arise through statutes, prison regulations, and policies. *Chappell*, 706 F.3d at 1063. To require due process, a state liberty interest must be one of "real substance." *Sandin*, 515 U.S. at 477-87. "Real substance" means freedom from (1) restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *id.* at 484, or (2) state action that "will inevitably affect the duration of [a] sentence," *id.* at 487. After *Sandin*, the language of state statutes and regulations play little, if any, role in determining the existence of a protected, state-created liberty interest. *See Wilkinson*, 545 U.S. at 222-23 ("the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of the regulations regarding those conditions but the nature of those conditions 'in relation to the ordinary incidents of prison life.'").

First, Hawaii's inmates have no federal or state-created liberty interest in parole. *See Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979); *Jago v. Van Curren*, 454 U.S. 14, 17–21 (1981) (holding there is no constitutionally protected interest in a parole date even after a parole date is set); *Mujahid v. Apao*, 795 F. Supp. 1020, 1024 (D. Haw. 1992) (finding no state-created liberty interest in parole under Hawaii's parole regime); *Rideout v. Haw.*

*Paroling Auth.*, 2014 WL 1571286, at *3 (D. Haw. April 17, 2014) (same, collecting District of Hawaii cases); *Turner v. Haw. Paroling Auth.*, 93 Haw. 298, 302, 1 P.3d 768, 772 (2000). In addition, Raines' sixty-day sanction in disciplinary segregation was well within his sentence of life with parole. As a state inmate subject to Hawaii's laws, Raines has no direct or state-created liberty interest in parole.

Second, to the extent Raines asserts that Jinbo and Baltero's actions *may* result in his diminished *future* possibility of parole, his claim fails. "The decision to release a prisoner rests on a myriad of considerations. And, the prisoner is afforded procedural protection at his parole hearing in order to explain the circumstances behind his misconduct record." *Sandin*, 515 U.S. at 487. The mere possibility that a disciplinary action taken against a prisoner could later influence a prisoner's chance at early release is "too attenuated" to implicate the Due Process Clause. *Id.* Raines has no federal or state-created liberty interest in the future possibility for release on parole.

Third, even accepting that Jinbo and Baltero entered inaccurate or false information in Raines' institutional file, and his allegations are too vague and conclusory for the court to reach that conclusion, Raines has no liberty interest in the procedures relating to the grant of parole, including the maintenance of

13

accurate prison files. *See Johnson v. Rodriguez*, 110 F.3d 299, 309 n.13 (5th Cir. 1997); *see also O'Kelley v. Snow*, 53 F.3d 319, 321 (11th Cir. 1995) ("[U]nless there is a liberty interest in parole, the procedures followed in making a parole determination are not required to comport with standards of fundamental fairness.").[7]

That is, a prisoner has no liberty interest in the accuracy of his prison file unless the allegedly erroneous information will "*inevitably* affect[] the duration of his sentence." *Ricchio v. Eichenberger*, 2011 WL 43536, at *3 (E.D. Cal. Jan. 6, 2011) (emphasis added); *Ramirez v. Galaza*, 334 F.3d 850, 859-60 (9th Cir. 2003) (holding inmate has a right to expungement only if expungement is likely to accelerate the prisoner's eligibility for parole); *Rio v. Schwarzenegger*, 2009 WL 1657438, at *6 (C.D. Cal. June 10, 2009) ("[A]n inmate seeking to expunge erroneous information from his file under the Due Process Clause 'must show that the false information will inevitably lengthen the duration of the inmate's incarceration.'"). The allegedly inaccurate information cited by Raines as contained in his institutional file will not inevitably affect his life with parole sentence. *See Meachum*, 427 U.S. at 225.

---

[7]The Ninth Circuit Court of Appeals has not recognized a free-standing constitutional right to an accurate prison file. *See Hernandez v. Johnston*, 833 F.2d 1316, 1319 (9th Cir. 1987).

Finally, to be clear, the court acknowledges that Raines is not challenging the sixty days he spent in SCC disciplinary segregation. That disciplinary decision was made by SCC prison officials, based on events that occurred in Arizona, and was imposed at SCC.[8] Raines alleges no facts showing this disciplinary segregation subjected him to atypical or significant hardship, or that this incident can be charged to Jinbo and Baltero. Raines does not assert he was given *additional* discipline after Jinbo and Baltero edited his DPS institutional file. He therefore cannot allege that he was subjected to atypical or significant hardship due to Jinbo or Baltero's actions.

Raines fails to plausibly allege that the changes to his DPS institutional file created atypical and significant deprivations to his confinement in relation to the normal incidents of prison life, or will invariably affect the duration of his sentence. *See Ramirez*, 334 F.3d at 861 (further citations omitted). Raines' federal Due Process Claims are DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), with leave granted to amend.

---

[8] If Raines seeks to challenge that detention, he must do so in Arizona. *See* 28 U.S.C. § 1391.

**E.    State Law Claims: Counts II, IV, VI-IX**

Raines is notified that, unless he can amend his Complaint to state at least one cognizable federal claim, the court will decline supplemental jurisdiction over his state law claims and dismiss them without prejudice.  *See* 28 U.S.C. § 1367(c)(3)(discussing when a federal court may accept or decline supplemental jurisdiction).

## IV.  LEAVE TO AMEND

Raines' Complaint is DISMISSED.  28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e (c)(1).  He may file an amended complaint on or before July 8, 2016 that cures the deficiencies noted in this Order.

An amended complaint generally supersedes the original complaint.  *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967).  Local Rule 10.3 further requires that an amended complaint be complete in itself without reference to any prior pleading.  The court will not generally refer to the original pleading to make an amended complaint complete.  Defendants not named in the caption and claims dismissed without prejudice that are not realleged in an amended complaint may be deemed voluntarily dismissed.  *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) ("[C]laims dismissed with prejudice [need not] be repled in a[n] amended complaint to preserve them for appeal. . . . [but] claims [that are]

voluntarily dismissed [are] . . . waived if not repled."). In an amended complaint, each claim and the involvement of each Defendant must be sufficiently alleged. Raines is notified that he must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii if he elects to amend his pleading.

### V. 28 U.S.C. § 1915(g)

If Raines fails to timely file an amended complaint, or is unable to amend his claims to cure their deficiencies, this dismissal shall count as a "strike" under the "3-strikes" provision of 28 U.S.C. § 1915(g). Under the 3-strikes provision, a prisoner may not bring a civil action or appeal a civil judgment *in forma pauperis* under 28 U.S.C. § 1915

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

### VI. CONCLUSION

(1) The Complaint is DISMISSED for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b)(1).

(2) Raines may file an amended complaint curing the deficiencies in his claims on or before July 8, 2016.

(3) Failure to timely amend the Complaint and cure its pleading deficiencies will result in dismissal of Raines' federal causes of action with prejudice for failure to state a claim, and Raines shall incur a strike pursuant to 28 U.S.C. § 1915(g).

(4)  The Clerk SHALL mail Raines a prisoner civil rights complaint form to assist him in complying with the directions in this Order.

IT IS SO ORDERED.

DATED: June 1, 2016 at Honolulu, Hawai'i.



_____
Derrick K. Watson
United States District Judge

_____
*Todd James Raines v. Hawaii Dep't of Public Safety, et al.*;
Civil No. 16-00197 DKW-RLP; **ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A(b)**

*Raines v. Hawaii Dep't of Public Safety,* 1:16-cv-00197 DKW/RLP dkw (ftsc DP inst. file); scr'g 2016